**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Xiping Wang,

Petitioner,

v.

Luis Rosa, Jr., et al.,

Respondents.

No. CV-26-02909-PHX-DWL

**ORDER**

This is a habeas corpus proceeding under 28 U.S.C. § 2241 that was referred to a magistrate judge for the preparation of a report and recommendation ("R&R"). (Doc. 2.) On August 14, 2026, the R&R issued. (Doc. 10.) It concludes that Petitioner is entitled to a bond hearing, such that his habeas petition should be granted in part. (*Id.* at 24.)

Although neither side filed objections to the R&R, the Court retains authority to reject or modify the recommended disposition. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). *See also Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[W]hile the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* . . . ."); *Decker v. Berryhill*, 856 F.3d 659, 663 (9th Cir. 2017) ("A district court's authority to review a magistrate judge's [R&R] is not conditioned on a party's making an objection."). With the utmost respect to the Magistrate Judge, the Court concludes this is one of those rare instances where rejection of the R&R's recommended disposition is

warranted despite the absence of objections. *See also Savin v. Rivas*, 2026 WL 1162384 (D. Ariz. 2026) (declining to follow similar R&R).

As set forth in the R&R, Petitioner is a native and citizen of China who entered the United States without inspection in February 2025, was subsequently removed, and then reentered the United States without inspection in April 2025, at which time he was detained near the border by immigration authorities and placed in expedited removal proceedings. (Doc. 1 ¶ 3; Doc. 9-1 ¶ 7; Doc. 10 at 3.) In October 2025, an immigration judge ordered that Petitioner be removed to China, but Petitioner has appealed the removal order to the Board of Immigration Appeals ("BIA") and his appeal remains pending. (Doc. 9-1 ¶ 11; Doc. 10 at 3.)

As the R&R correctly notes, Petitioner's continued detention under these circumstances is statutorily mandated under 8 U.S.C. § 1225(b)(2). (Doc. 10 at 4.) The disputed issue is whether this statutorily mandated civil detention is nevertheless unconstitutional, at least as applied to Petitioner. (*Id.* at 1 ["Petitioner's Petition presents the narrow question of whether a noncitizen subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) is nonetheless entitled to a bond hearing under the Due Process Clause of the Fifth Amendment when their detention has become prolonged."].)

In *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156 (D. Ariz. 2020), this Court addressed a similar issue. There, an alien who was "taken into DHS custody" in January 2020 and "detained under 8 U.S.C § 1225(b)" filed a habeas petition arguing, *inter alia*, that "his prolonged detention without a custody redetermination hearing violates the Due Process Clause of the Fifth Amendment." *Id.* at 1160-61. The Court disagreed and denied the habeas petition. After canvassing the relevant Ninth Circuit and Supreme Court authorities, the Court stated:

> [I]t is permissible under 8 U.S.C. § 1225(b) to detain an arriving alien who has expressed a credible fear of persecution and/or who is subject to removal because he is not clearly entitled to admission. As for how long such detention may last, although the Ninth Circuit suggested in *Rodriguez II* [*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)] and *Rodriguez III* [*Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)] that prolonged

> detention under § 1225(b) would raise constitutional concerns when applied to a specific subgroup of arriving aliens—namely, LPRs [lawful permanent residents] who previously resided in the United States—it did not question the constitutionality of the prolonged detention of arriving aliens in Petitioner's circumstances. Instead, it seemed to reaffirm that, under [*Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc)], such detention is constitutionally permissible while an asylum/removal proceeding is pending. Nor has the Ninth Circuit issued any [subsequent] decisions that overrule those earlier holdings.

*Id.* at 1175-76 (cleaned up). Later, the Court added:

> [T]he Court must do its best to discern and apply the law of the Ninth Circuit as it currently stands. As discussed, *Barrera-Echavarria* suggests it is constitutionally permissible to require Petitioner to remain in custody for the duration of his removal proceeding. If anything, the Ninth Circuit seemed to ratify that understanding of *Barrera-Echavarria* in *Rodriguez II* and *Rodriguez III*. And neither the Supreme Court's decision in [*Jennings v. Rodriguez*, 583 U.S. 281 (2018)] nor the Ninth Circuit's remand order in *Rodriguez V* [*Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018)] casts any doubt upon the continued validity of those portions of *Barrera-Echavarria*, *Rodriguez II*, and *Rodriguez III*. Thus, . . . Petitioner is not entitled to a bond hearing under current Ninth Circuit law.

*Id.* at 1177 (cleaned up).

In reaching this conclusion, the Court acknowledged that some district courts—including the court in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019)—had come out the other way and concluded that aliens being detained under § 1225(b) may, at least after a certain period of time in immigration custody, be entitled as a matter of due process to a bond hearing. *Id.* at 1177. But the Court identified reasons why it respectfully disagreed with those decisions, including that they "did not cite or discuss *Barrera-Echavarria*, the 'entry fiction,' or the portions of *Rodriguez II* and *Rodriguez III* that seem to adopt *Barrera-Echavarria*'s logic as it pertains to arriving aliens who are detained under § 1225(b) and are subject to the entry fiction." *Id.* at 1177 n.25.[1] Finally, the Court

[1] In *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), the Supreme Court invoked the entry fiction as one reason for concluding that the habeas petitioner in that case—an alien who had been detained on Ellis Island for more three years upon attempting to enter the country—did not have a constitutional right to a bond hearing. *Id.*

emphasized that its denial of habeas relief was "not an approval of indefinite detention. The statute under which Petitioner is being detained authorizes his detention only 'until specified events take place,' *i.e.*, until the resolution of the current removal proceeding. And if Petitioner's removal ceases to become reasonably foreseeable, Petitioner will have other potential avenues for seeking release." *Id.* (citation omitted).

Two days after *Ibarra-Perez* was decided, the Supreme Court decided *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). There, an alien apprehended near the border was "detained . . . for expedited removal" pursuant to § 1225(b). *Id.* at 114. After an IJ found that the alien lacked a credible fear of persecution and denied his asylum claim, the alien filed a habeas petition seeking to challenge, on various grounds, the unfavorable credible-fear determination. *Id.* at 114-15. The disputed issue in *Thuraissigiam* was the constitutionality of a statutory provision barring judicial review of such claims—the Ninth Circuit held this provision was unconstitutional but the Supreme Court reversed, explaining that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. [Petitioner] attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural

---

at 215-16 (concluding that "we do not think that [the petitioner's] continued exclusion deprives him of any statutory or constitutional right" in part because "he is treated as if stopped at the border," and contrasting the petitioner's situation with that of "resident aliens temporarily detained pending expeditious consummation of deportation proceedings"). *See also Barrera-Echavarria*, 44 F.3d at 1449-50 ("Barrera argues that *Mezei* is inapposite because it involved only the legality of continued *exclusion* under the special provisions of the Passport Act, and not the legality of Mezei's *detention*. This interpretation, however, is incorrect: while the Court spoke in terms of exclusion, its holding necessarily included a determination that Mezei's *detention* was legal as well.") (citation omitted); *Palma v. Arteta*, 2026 WL 697015, *11-12 (S.D.N.Y. 2026) ("[T]he entry distinction applies with full force in challenges to a non-entered alien's detention. *Mezei*, after all, involved a non-entered alien who sought release from detention on bond, and the Supreme Court rejected his challenge because he was 'an alien on the threshold of initial entry.' It makes little sense to distinguish the Government's power with respect to a non-entered alien's 'application for admission' from its power with respect to such an alien's detention. The power to exclude and the power to detain pending exclusion go hand in hand.") (cleaned up).

[due process] rights other than those afforded by statute." *Id.* at 107.

In the Court's view, *Thuraissigiam* underscores the conclusion reached in *Ibarra-Perez*. Indeed, "[w]hile *Thuraissigiam* was decided in the admission context, it cited and reaffirmed the continuing vitality of *Mezei*, which addressed the issue of detention." *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 333 (W.D.N.Y. 2021). Accordingly, since *Thuraissigiam* was decided, many district courts—albeit not all (and not even most) district courts—have concluded that an arriving alien subject to statutorily mandated detention under §§ 1225(b)(1) or 1225(b)(2) does not have a constitutional right to a bond hearing. *See, e.g.*, *Nkweta v. Rokosky*, 2026 WL 2110635, *1 (D. Ariz. 2026); *Korneva v. Rokosky*, 2026 WL 851591, *1 (D. Ariz. 2026); *Palma v. Arteta*, 2026 WL 697015, *11-12 (S.D.N.Y. 2026); *Leon Alcazar v. Cantu*, 2025 WL 2548698, *12-14 (D. Ariz. 2025), *adopted by* 2025 WL 2304357 (D. Ariz. 2025); *Mendoza-Linares v. Garland*, 2024 WL 3316306, *2 (S.D. Cal. 2024); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676-79 (S.D. Tex. 2021); *Gonzales Garcia*, 513 F. Supp. 3d at 336. *See generally Doe v. Bondi*, 2025 WL 3516292, *5-6 (D. Colo. 2025) (surveying the relevant authorities, noting that "[s]ome courts have held that, at some point, due process requires a noncitizen subject to prolonged detention under Section 1225(b) be given an individualized bond hearing before an immigration judge . . . [b]ut other courts have held that due process imposes no time limit or hearing requirement when an alien is subject to mandatory detention under Section 1225(b) while removal proceedings are pending," and concluding that "procedural due process does not afford inadmissible arriving aliens subject to prolonged detention a right to release or a bond hearing prior to the conclusion of removal proceedings").

Having carefully considered the latest authorities on this topic, as well as the R&R's detailed analysis[2] and the parties' arguments, and acknowledging the existence of a split in

---

[2] The Court appreciates the R&R's detailed analysis and acknowledges that the issue presented here is a difficult one as to which reasonable people (and judges) can differ. With that said, the Court is unpersuaded by the R&R's contention that the concern with *Banda* identified in *Ibarra-Perez* (i.e., *Banda*'s failure to "cite or discuss *Barrera-Echavarria* . . . or the portions of *Rodriguez II* and *Rodriguez III* that seem to adopt *Barrera-Echavarria*'s logic as it pertains to arriving aliens who are detained under § 1225(b) and are subject to the entry fiction") has "been mitigated by the fact that *Banda* has been recently used numerous times by [district] courts throughout this Circuit." (Doc. 10 at 16.) If those

authority on the issue, the Court still concludes there is no constitutional right to a bond hearing in this context. *See also Mamedova v. Noem*, 2026 WL 1162282 (D. Ariz. 2026) (reaching same conclusion). This conclusion is also consistent with the Ninth Circuit's recent observation that, "after the Supreme Court's decisions in *Jennings* and [*Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022)], it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022).

Nor does this case fall within either of the potential exceptions identified in *Ibarra-Perez*. First, this is not a situation involving "indefinite" detention because the duration of Petitioner's detention has a known endpoint that is subject to external constraints—namely, the conclusion of his BIA appeal (and, perhaps, any subsequent petition for review in the Ninth Circuit). *Cf. Prieto-Romero v. Clark*, 534 F.3d 1053, 1064-65 (9th Cir. 2008) (rejecting prolonged detention claim where the delay in removal was caused by the petitioner's request for "[j]udicial review, [which] unlike the administrative process the government invoked in [a different case], is subject to strict procedural rules" that serve as an "independent, external constraint" and provide "satisfactory assurance that [the process] will be resolved with reasonable expedition") (cleaned up). Second, contrary to the R&R's conclusion (Doc. 10 at 22), Petitioner has not established that his removal has ceased being "reasonably foreseeable." That exception is sometimes invoked when an alien has been granted withholding of removal from his home country and the government has not established a reasonable likelihood of removal to a third country. *See, e.g., Chen v. Noem*, 2026 WL 962606, *2 (D. Ariz. 2026) (granting habeas petition filed by Chinese detainee where "China will not be considered as a removal destination (due to the withholding order)," "all third-party states have refused to accept her as a deportee," and "Respondents indicate[d] they are no longer even responsible for attempting to identify a potential third country to which Petitioner might be removed") (cleaned up). But here, Petitioner does

---

district courts have simply cited *Banda* without meaningfully addressing the concern identified in *Ibarra-Perez*, the volume of those citations does not make the concern go away.

not contend he has been granted withholding of removal to China and has not otherwise attempted to show why such removal is unforeseeable.

As a final matter, the R&R emphasizes that "[e]ven considering that the INA does not statutorily provide bond hearings for 1225(b) petitioners, a statute does not reign supreme in our system—the Constitution does." (Doc. 10 at 22-23.) Although this powerful statement is certainly true as far it goes, the Court is also mindful that, in our system of government, "Congress is entitled to set the conditions for an alien's lawful entry into this country." *Thuraissigiam*, 591 U.S. at 107. Here, Congress has chosen to mandate detention for aliens in Petitioner's circumstance, and as an arriving alien, Petitioner has "no entitlement to procedural rights other than those afforded by statute." *Id*. *See also Demore v. Kim*, 538 U.S. 510, 521 (2003) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.") (citation omitted); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Accordingly,

**IT IS ORDERED** that:

1. The R&R's recommended disposition (Doc. 10) is **rejected**.
2. The habeas petition (Doc. 1) is **denied**.
3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 1st day of September, 2026.

Dominic W. Lanza
United States District Judge